## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

_____

CONNIE A. BAILEY

    Plaintiff,                    Case No.:  6:21-cv-00023-RBD-DCI

v.

MRS BPO, LLC,

    Defendant.

_____

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Defendant, MRS BPO, LLC ("MRS"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule 3.01, hereby presents the following Motion for Summary Judgment and Memorandum in Support, and states as follows:

### I.    INTRODUCTION

Plaintiff, Connie A. Bailey ("Plaintiff") filed this action alleging that MRS violated the Fair Debt Collection Practices Act ("FDCPA"), the Florida Consumer Collection Practices Act ("FCCPA") and the Telephone Consumer Protection Act ("TCPA") by disclosing information that it was collecting on a debt without verifying Plaintiff's identity, placing at least ten collection calls after Plaintiff requested that the phone calls cease and placing telephone calls to Plaintiff's cellphone using an automatic telephone dialing system ("ATDS").

Discovery confirmed that: (1) Plaintiff has not, and cannot, produce evidence to support the essential elements of each of her claims; (2) MRS did not provide any information regarding a debt during any of the telephone calls; (3) MRS promptly ceased all communications after receiving a cease request; and (4) MRS did not place phone calls to Plaintiff using an ATDS.  As a result, MRS now moves the Court for summary judgment in its favor with respect to all three counts asserted in Plaintiff's Complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.    FACTUAL BACKGROUND

### A.    Account History

On December 18, 2020, GM Financial placed an account for Plaintiff with MRS for collection.  Declaration of William Michael Perkins ("Perkins Decl.") ¶ 4; Account Notes, Ex. A.  On December 20, 2020, MRS sent an initial collection letter to Plaintiff.   Perkins Decl. ¶ 5; Collection Letter, Ex. B.  That communication contained a 15 U.S.C. § 1692g-notice in conformity with the FDCPA.  *Id.*

MRS placed a total of four attempted outbound calls to telephone number (xxx) xxx-4676 (the "4676 number") using telephone numbers (xxx) xxx-4872, (xxx) xxx-4178 and (xxx) xxx-3778.  *Id.* ¶ 6; Ex. A.  The first call was on December 19, 2020 and there was no answer.  *Id.* ¶ 7.  The second call was on December 21, 2020 and an unidentified third party answered the call.  *Id.* ¶ 7.  During the second call, the MRS representative advised that the phone call may be monitored and

recorded, stated he was trying to reach Connie Bailey, and advised that he was with "MRS Associates," but did not provide any information regarding the debt.  *Id.* ¶ 8; December 21, 2020 Call Recording, Ex. C.  The third call was on December 23, 2020 and there was no answer.  *Id.* ¶ 9.  The fourth call was on December 30, 2020, but the call was terminated before it could be connected to an MRS representative. *Id.* ¶ 10.

On December 30, 2020, after the attempted outbound call, MRS received the only inbound phone call from the 4676 number.  *Id.* ¶ 11.  During the phone call, the unidentified caller requested to be taken "off the call list."  *Id.* ¶ 12; December 30, 2020 Call Recording, Ex. D.  Following the December 30, 2020 inbound call from the unidentified caller, MRS promptly ceased all further communications on the Account. *Id.* ¶ 12.  The Account Notes maintained by MRS on Plaintiff's account reflect all of the communications by MRS in connection with Plaintiff's Account. *Id.* ¶ 13.  All of MRS's calls to the 4676 number were placed using LiveVox Human Call Initiator ("HCI"), a human-initiated outbound dialing system designed and operated by non-party LiveVox, Inc.  *Id.* ¶ 14; Declaration of Laurence Siegel ("Siegel Decl.") ¶ 4, Call Records, Ex. 1.

## B.  LiveVox HCI

HCI is one of LiveVox's human-initiated outbound dialing systems.  Siegel Decl. ¶ 6.  HCI, like all of LiveVox's human-initiated systems, is a distinct outbound

dialing system, separated from LiveVox's other outbound dialing systems at the hardware and software level.  *Id.*  HCI uses a unique combination of software and hardware that is not shared with any other LiveVox system.  *Id.*  The software underlying HCI is designed only to enable the type of calls launched in HCI.  *Id.* ¶ 7.  All HCI calls are routed through a set of servers exclusively dedicated to HCI calls.  *Id.*  Those HCI servers cannot launch automated calls.  *Id.*

Every call launched using HCI requires human intervention by an agent, an employee or other person working on behalf of the LiveVox customer making the call.  *Id.* ¶ 8.  The human intervention takes the form, in part, of a "clicker agent" clicking on a dialogue box to confirm the launching of a call to each telephone number.  *Id.*  The call will not be launched unless the clicker agent clicks on the dialogue box.  *Id.*

The clicker agent is also able to monitor a real-time dashboard that contains information about "closer agent" availability, number of calls in progress, and related metrics.  *Id.* ¶ 9.  The closer agent is the agent designated by the LiveVox customer to speak with the call recipient.  *Id.*  For a call to be launched in HCI, the clicker agent must take the action previously described and there must also be a closer agent who is available to take the call.  *Id.*  Further, HCI is designed to allow a clicker agent to control how often calls are made by reviewing the dashboard and making judgments based on that information when deciding when to launch any

particular call.  *Id.*

A clicker agent, when logged into HCI, is logged into HCI only and not into any other LiveVox outbound dialing system. *Id.* ¶ 10.  To log into any other LiveVox outbound dialing system, the clicker agent would first need to log out of HCI.  *Id.* HCI does not use any predictive or other kind of algorithm to engage in predictive dialing of any kind.  *Id.* ¶ 11.  For example, it does not use a statistical algorithm to minimize the time that agents spend waiting between calls.  *Id.*

HCI does not have the present capacity to auto-dial; it does not have any features that permit autodialing, and there are no features in HCI that can be turned on to enable autodialing.  *Id.* ¶ 12.  HCI does not have the potential capacity to auto-dial; there are no features that can be activated, deactivated, or added to the system to enable auto-dialing.  *Id.* ¶ 13.  There is no external application programming interface ("API") with which to add software to the system; the components of HCI are designed so as not to be able to transfer a list from one component to another; and the server that launches HCI calls only recognizes a request from the HCI agent presentation layer, which itself requires a click for each call.  *Id.*

HCI does not have the capacity to produce or store numbers to be called using a random or sequential number generator.  *Id.* ¶ 14.  HCI does not have the capacity to generate random ten-digit phone numbers and then to dial them.  *Id.* ¶ 15.  This means that HCI does not have the capability of assembling arbitrary ten-digit

telephone numbers to be called.  *Id.*  HCI does not have the capacity to generate sequential ten-digit phone numbers and then to dial them.  *Id.* ¶ 16.  In other words, HCI does not assemble ten-digit phone numbers such as (111) 111-1111, (111) 111-1112, and so on.  *Id.*

HCI does not have the capacity to use an artificial or pre-recorded voice and does not use any artificial or pre-recorded voice.  *Id.* ¶ 17.  Indeed, it is not possible to launch any artificial or pre-recorded voice campaigns with HCI, nor is it possible to deliver any pre-recorded or automated voice calls or messages.  *Id.*  HCI cannot be turned on or triggered by a person, then left alone to launch calls.  *Id.* ¶ 18.  Each call must be launched by a click by a clicker agent, and a click can launch only one single call.  *Id.*

HCI was built not to store any telephone numbers to be called and in fact does not store any telephone numbers.  *Id.* ¶ 19.  HCI does not have a random or sequential number generator and does not produce or store telephone numbers to be called using a random or sequential number generator.  *Id.*  HCI does not use a random or sequential number generator to perform any function whatsoever, and does not use a random or sequential number generator to determine the order in which to make phone calls from an existing list of phone numbers.  *Id.*

In order to make phone calls using HCI, a LiveVox customer must select the order it wants to call each number in a campaign file from a finite list of options.  *Id.*

¶ 21.  The process of selecting the order in which calls are made is done in a part of the LiveVox platform separated (logically and physically) from every LiveVox outbound dialing system (including HCI).  *Id.*  None of the options available for making calls enable a customer to make calls in a random order, and none involve the use of a random or sequential number generator.  *Id.*

When MRS intends to make a call through the HCI system, the telephone number to be dialed, which was manually entered into a database, is presented to a human agent; that agent then selects the number to be called and launches the call by physically clicking on the number.  Perkins Decl. ¶ 15.  The agent must click on a dialogue box to confirm the launching of a call to a particular telephone number. *Id.*  The call cannot be launched unless the agent clicks on the dialogue box to confirm that the call should be placed.  *Id.*

Thus, each of the calls MRS placed to the 4676 number required an MRS representative to manually click on the dialogue box to launch the call to that particular telephone number—using direct human intervention and judgment and without the use of a random or sequential number generator.  *Id.* ¶ 16; Siegel Decl. ¶¶ 8-21.  MRS did not use a pre-recorded or artificial voice in connection with any call placed to the telephone number ending in the digits 4676.  Perkins Decl. ¶ 17. After MRS received a request to remove the 4676 number, MRS promptly ceased all further communications on the account.  *Id.* ¶ 18.

Because Plaintiff has not established, and cannot establish her claims under the FDCPA, FCCPA or TCPA, MRS now moves the Court to enter summary judgment in its favor.

### III.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Even so, the non-moving party cannot rest on bare allegations alone, but must designate specific material facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("The existence of a mere scintilla of evidence supporting a plaintiff's position is insufficient . . . .").

Claims that are factually unsupported should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323-24. "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Id.* at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Because the undisputed facts show that Plaintiff cannot prove any of her claims as a matter of law, MRS is entitled to summary judgment.

## IV. ARGUMENT

### A. MRS is entitled to summary judgment with respect to Plaintiff's claim that MRS violated the Fair Debt Collection Practices Act.

Plaintiff contends that MRS violated the FDCPA by disclosing information that it was collecting on a debt without verifying Plaintiff's identity and by placing at least ten collection calls to Plaintiff after she requested that the phone calls cease. Plaintiff asserts that MRS violated sections 1692b, 1692b(2), 1692c, 1692c(b), 1692d and 1692d(5) of the FDCPA.

#### 1. Sections 1692b and 1692b(2)

Plaintiff argues that MRS violated sections 1692b and 1692b(2) by disclosing to Plaintiff that it was attempting to collect a debt without verifying that it was speaking with the person who allegedly owes the debt in question. Specifically, Plaintiff asserts that "[MRS] stated it was calling in regard to a debt without verifying that the person with whom [MRS] was speaking was actually the person

to whom the debt belonged."  Pl's Compl. ¶ 48.

Section 1692b provides that "[a]ny debt collector communicating with any person other than the consumer *for the purpose of acquiring location information* about the consumer shall—(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer; (2) not state that such consumer owes any debt…" 15 U.S.C. § 1692b(2) (emphasis added).  In this case, the record unequivocally demonstrates that MRS did not communicate with a third party "*for the purpose of acquiring location information*," an essential element of the statutory claim.  Not only does Plaintiff fail to establish that MRS sought location information, but the record itself contains no indication that MRS sought location information.  In fact, during the only connected outbound phone call, the MRS representative specifically asked to speak with Plaintiff and did not indicate that he was "confirming or correcting location information."  *See* Perkins Decl. ¶ 8; Ex. C.  The evidence demonstrates that the purpose of the phone call was to reach Plaintiff, *not* to "acquire location information" from a third party.  *Id.*

Even if the purpose of the phone call had been to acquire location information from a third party, which it was not, MRS did not state that Plaintiff owes any debt. *Id.*  Rather, during the December 21, 2020 outbound call with the unidentified third party, the MRS representative advised that the phone call may be monitored and

recorded, stated he was trying to reach Connie Bailey, and advised that he was with "MRS Associates" in response to the call recipient's question. *Id*. The MRS representative did not provide *any* information regarding the debt. *Id*. Plaintiff has not, and cannot, produce any evidence establishing essential elements of her claim, and MRS is entitled to summary judgment on Plaintiff's sections 1692b and 1692b(2) claims.

### 2.    Sections 1692c and 1692c(b)

Plaintiff contends that MRS violated sections 1692c and 1692c(b) by disclosing to Plaintiff that it was attempting to collect a debt without verifying that it was speaking with the person who allegedly owes the debt in question. Section 1692c(b) provides that "without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer. . ." Thus, only a "communication" can create liability under section 1692c(b). Section 1692a(2) defines a communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

Here, there was only one connected outbound call, and on that call the MRS representative did not say that MRS was calling regarding the collection of a debt nor did the MRS representative disclose information regarding the debt. *Id.* Rather, during the December 21, 2020 outbound phone call, the MRS representative merely

requested to speak with the debtor and stated that he was calling from "MRS Associates" in response to the third-party's request.  *See* Perkins Decl. ¶ 8; Ex. C. Thus, there was no "communication" within the meaning of the FDCPA and the provisions of section 1692c(b) do not apply.  *See Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264, 274 (S.D.N.Y. 2001) (FDCPA not violated by speaking to receptionist over the phone at debtor's place of employment and asking to be connected to debtor); *see also Horkey v. J.V.D.B. & Assocs., Inc.*, 179 F. Supp. 2d 861, 868 (N.D. Ill. 2002) (telephone conversation between a debt collector and a debtor's co-worker intended for the debtor and limited to inquiring as to the debtor's whereabouts did not violate section 1692c(b)).  Since Plaintiff has not, and cannot, produce any evidence establishing essential elements of her claim, MRS is entitled to summary judgment on Plaintiff's sections 1692c and 1692c(b) claims.

### 3.   Sections 1692d and 1692d(5)

Plaintiff asserts that MRS violated sections 1692d and 1692d(5) by placing at least ten collection calls to Plaintiff after she requested that the phone calls cease. Pl's Compl. ¶ 54.  The FDCPA prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Such harassing or abusive conduct prohibited by the FDCPA includes "(5) [c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously

with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C §
1692d(5). "Courts have held that '[w]hether there is actionable harassment or
annoyance turns not only on the volume of calls made, but also on the pattern of
calls." *Brandt v. I.C. System, Inc*., No. 8:09–cv–126–T–26MAP, 2010 WL 582051,
at *2 (M.D. Fla. Feb.19, 2010), *quoting Akalwadi v. Risk Mgmt. Alternatives, Inc*.,
336 F.Supp.2d 492, 505 (D. Md. 2004).

Although the question of whether a debt collector's conduct constitutes
harassment can be a question of fact, where, as here, no calls were made after the
debtor requested no further phone contact and there is no other evidence on this
point, the question can and should be resolved as a matter of law.  *See e.g., Tucker
v. CBE Group, Inc*., 710 F.Supp.2d 1301, 1305 (M.D. Fla. 2010) (granting summary
judgment in favor of defendant because "[d]efendant only left a total of six
messages, made no more than seven calls in single day, and did not call back the
same day after leaving a message."); *Waite v. Fin. Recovery Servs., Inc*., No. 8:09-
cv-02336-T-33AEP, 2010 WL 5209350, at *3–4 (M.D. Fla. Dec. 16, 2010) (finding
132 calls in a nine-month period insufficient to defeat summary judgment for a debt
collector);  *Lee v. Credit Management, LP*, 846 F.Supp.2d 716, 725 (S.D. Tex. 2012)
(granting summary judgment in favor of defendant because debt collector called
plaintiff "a handful of times" and spoke to him briefly); *Karp v. Financial Recovery
Serv. Inc.*, No. A-12-CA-985 LY, 2013 WL 6734110, *7 (W.D. Tex. Dec. 18, 2013)

(granting summary judgment in favor of defendant where defendant placed six calls to plaintiff in two weeks); *Carman v. CBE Group, Inc.*, 782 F.Supp.2d 1223, 1229-32 (D. Kan. 2011) (granting summary judgment in favor of defendant where defendant called plaintiff 149 times in a two-month period).

The record demonstrates that MRS placed a total of four attempted outbound calls to the 4676 number with the intention of reaching the debtor on the account, not to harass Plaintiff.  *See Carman v. CBE Group, Inc*., 782 F.Supp.2d 1223 (D. Kan. 2011) (the court granted summary judgment against the debtor, holding that the debt collector's actions – calling the plaintiff on two phone numbers 149 times in 55 days – evidenced intent to establish contact, not intent to harass).  This is evidenced by the fact that MRS immediately ceased all future communications with Plaintiff upon the request to remove the number.  Perkins Decl. 12; Ex. A.  Plaintiff failed to produce evidence showing otherwise.  In fact, the phone records for the 4676 number produced by T-Mobile in response to a third-party subpoena issued by Plaintiff further substantiates MRS's account notes.  *See* Declaration of Aylix K. Jensen ("Jensen Decl."), ¶ 4; Excerpt of Phone Records, Ex. 4, at p. 2.

Specifically, the only calls associated with MRS in the T-Mobile records are as follows:

| Date | Time | Duration | Direction | Calling Number | Dialed Number | Service Code |
|------|------|----------|-----------|----------------|---------------|--------------|
| 12/19/20 | 17:54:14 | 9 | Incoming | xxx-xxx-4872 | xxx-xxx-4676 | 02A;11 |

| 12/19/20 | 17:54:45 | 9 | Outgoing | xxx-xxx-4872 | xxx-xxx-9999 | 02A |
| 12/21/20 | 15:43:33 | 38 | Incoming | xxx-xxx-4178 | xxx-xxx-4676 | 11 |
| 12/23/20 | 22:40:15 | 9 | Incoming | xxx-xxx-3778 | xxx-xxx-4676 | 029:11 |
| 12/23/20 | 22:40:32 | 9 | Outgoing | xxx-xxx-3778 | xxx-xxx-9999 | 29 |
| 12/30/20 | 15:09:59 | 15 | Incoming | xxx-xxx-4178 | xxx-xxx-4676 | 11 |
| 12/30/20 | 15:11:21 | 86 | Outgoing | xxx-xxx-4676 | xxx-xxx-4178 | |

*Id.*

Except for the 12/19/20 and 12/23/20 outgoing calls in the above-referenced chart, which will be addressed below, the remaining calls align with MRS's account notes and HCI's call records.[1]  As for the 12/19/20 and 12/23/20 outgoing calls, the T-Mobile records indicate that these two calls are the result of a call forwarding feature and *were not* outgoing calls directed to MRS.  Rather, the T-Mobile records reflect that the incoming calls to the 4676 number on those same dates were automatically redirected as outgoing calls to a telephone number ending in 9999, which is not associated with MRS.  *Id.*; Perkins Decl. ¶ 19.  This is demonstrated by the "service code" associated with the two outgoing calls.  Specifically, the service code associated with 12/21/20 outgoing call is 02A, which is defined in T-Mobile's records as "Call Forwarding on No Reply (CFNRy)."  *Id.*  The service code

---

[1] The times provided in the T-Mobile phone records are reflected in Coordinated Universal Time (UTC), whereas the time provided in MRS's phone records are reflected in Eastern Time (ET).

7119088v3

associated with the 12/23/20 outgoing call is 29, which is defined in T-Mobile's records as "Call Forwarding on Mobile Subscriber Busy (CFB)." *Id.*

In addition, the "calling number" - which is the number that initiated the call - associated with the outgoing calls reflects MRS's numbers and are the same numbers that MRS used to initiate the incoming calls to the 4676 number immediately before the forwarded outgoing calls. *Id.*; Perkins Decl. ¶ 6; Ex. A. If these were standard outgoing calls in which Plaintiff used the 4676 number to call MRS, the "calling number" column would identify the 4676 number, not MRS's number. In addition, the "dialed number" column would identify MRS's number, not some unknown number ending in 9999. Thus, while the T-Mobile records reflect two additional outgoing calls on 12/19/20 and 12/23/20, upon further examination, the records clearly demonstrate that the calls represent MRS's outbound calls to the 4676 number being forwarded to an unknown number ending in 9999.

According to MRS's account notes, HCI's call log and the T-Mobile records, MRS ceased all further communications following the only inbound call on December 30, 2020, and Plaintiff has failed to produce any evidence showing otherwise. Contrary to Plaintiff's allegations, the evidence in the records evidence an intent to establish contact, not to harass Plaintiff. MRS's conduct in this matter does not amount to a violation of section 1692d. As such, MRS is entitled to judgment in its favor on Plaintiff's claim under sections 1692d and 1692d(5).

**B.     MRS is entitled to summary judgment with respect to Plaintiff's claim that MRS violated the Florida Consumer Collection Practices Act.**

Plaintiff argues that MRS violated Florida Statute Section 559.72(7) by "continuously calling Plaintiff after being asked to stop." Compl. ¶ 59. Fla. Stat. § 559.72(7) provides as follows:

> In collecting consumer debts, no person shall ... [w]illfully communicate with the debtor ... with such frequency as can reasonably be expected to harass the debtor ..., or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor....

As the record demonstrates, MRS did not violate section 559.72(7) because the number and manner of its communications were not abusive or harassing as a matter of law. Moreover, the record clearly establishes that there were no calls after the unidentified caller requested to be taken off the call list, rendering the claim false.

There is nothing in MRS's initial collection letter or in the connected calls that can be construed as abusive. Nor was the frequency sufficient to be harassing. *See Arianas v. LVNV Funding LLC.*, 132 F.Supp.3d 1322 (M.D. Fla. 2015) (six letters over the course of more than a year and four unanswered calls insufficient to be harassing); *Desmond v. Accounts Receivable Mgmt., Inc.*, 72 So.3d 179, 181 (Fla. 2d DCA 2011) (eighteen calls insufficient as matter of law to violate FCCPA); *Schauer v. Morse Operations, Inc.*, 5 So.3d 2, 5 (Fla. 4th DCA 2009) (seven calls insufficient as a matter of law to violate FCCPA). For the same reasons that MRS

did not violate section 1692d, MRS is entitled to summary judgment on Plaintiff's FCCPA claim.

    **C.**    **MRS is entitled to summary judgment with respect to Plaintiff's claims under the Telephone Consumer Protection Act.**

The TCPA makes it unlawful for any person to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). To establish a TCPA claim, a plaintiff must prove that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). To qualify as an ATDS, "the equipment in question must use a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021).

Here, MRS is entitled to summary judgment with regard to Plaintiff's TCPA claim, because the undisputed record shows that MRS did not use an ATDS to make phone calls to Plaintiff.

1. <u>Plaintiff has not and cannot provide evidence suggesting that the phone calls she received from MRS were made with an ATDS.</u>

Plaintiff bears the burden to demonstrate that MRS placed calls to her using an ATDS.  *See* 47 U.S.C. § 227(b)(1); *see also Meyer*, 707 F.3d at 1043.  In order for a telephone dialing system to be an ATDS, it must have the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator[,] and to dial such numbers." 47 U.S.C. § 227(a)(1)(A); *see also Facebook, Inc.,* 141 S.Ct. 1163, 1173 ("a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called."); *ACA International v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018) (noting that the "auto" in the word "autodialer—or, equivalently, 'automatic' in 'automatic telephone dialing system,' 47 U.S.C. § 227(a)(1)—would seem to envision non-manual dialing of telephone numbers.").

Plaintiff has not produced and cannot produce any evidence, let alone testimony from someone with personal knowledge of the technology used by MRS, which would suggest that MRS placed calls to her using an ATDS.  In fact, in discovery, Plaintiff admitted that the factual basis for her claim that the calls were made to her using an ATDS consisted of: (1) "the pause and lack of prompt human response during the calls that Plaintiff answered" and (2) "the sheer volume of calls

placed by Defendant strongly suggests the use of an ATDS."  Jensen Decl. ¶ 2; Responses to First Set of Interrogatories, Ex. 2 at p. 2.  Courts have granted summary judgment for defendants where a TCPA plaintiff relied on similar insufficient facts.  *See Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308–09 (S.D. Fla. 2016) (granting summary judgment for defendant on TCPA claim where plaintiff claimed she "heard" an autodialer); *Chyba v. Bayview Loan Servicing*, 3:14-cv-01415-BEN-BLM, 2016 WL 5405557, at *3 (S.D. Cal. Sept. 27, 2016) (plaintiff's contention that "there was an 'artificial time delay' at the beginning of each call" did not create triable issue of fact as to use of ATDS); *Estrella v. Ltd Fin. Servs., LP*, 8:14–CV–2624–T–27AEP, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015 ("[T]here is no foundation or support for Plaintiff's conclusion that 'clicks and delays' and 'prolonged silences' means that an ATDS or predictive dialer was being used to place the calls.").

In response to a request that she produce all documents supporting her claims that MRS violated any law and a request that she produce all documents which evidence or support the allegation that MRS used an ATDS to place calls to her, Plaintiff responded, "Plaintiff refers Defendant to BAILEY 000001…" Jensen Decl. ¶ 4; Responses to Requests for Production, Ex. 2 at pp. 6, 9.  The document produced by Plaintiff referenced in the response is a screen shot of the inbound and outbound

telephone calls from December 30, 2020. *Id.* Plaintiff provided nothing more to support her claim.

In light of this record, it is clear that Plaintiff has no evidence necessary to establish essential elements of her TCPA claim — namely, that MRS made phone calls to her using an ATDS. Thus, summary judgment in favor of MRS on Plaintiff's TCPA claim is warranted for this reason alone. *See Anderson*, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings.").

### 2. The record demonstrates that MRS did not place phone calls to Plaintiff using an ATDS.

The incontrovertible record reflects that MRS never made calls to Plaintiff using an ATDS. *See* Perkins Decl. ¶¶ 14-27; Siegel Decl. ¶¶ 4-21, Ex. 1; Jensen Decl. Exs. 2-3.) As a result, MRS is entitled to summary judgment with respect to Plaintiff's TCPA claim, irrespective of Plaintiff's failure to establish the essential elements of that claim.

The record demonstrates that HCI -- the system that MRS used to place telephone calls to Plaintiff -- is a human-initiated and human-controlled platform that requires an MRS agent to manually initiate the telephone call, including those

which MRS sent to Plaintiff.  Perkins Decl. ¶¶ 15-17; Siegel Decl. ¶¶ 4, 6-13.  The MRS system lacks the capacity to perform predictive dialing or to operate in an automated fashion, does not use a random or sequential number generator, does not have the capacity to store or produce telephone numbers or dial numbers using a random or sequential number generator and does not have the capacity to use an artificial or pre-recorded voice.  Siegel Decl. ¶¶ 14-20.  In other words, the HCI system is incapable of launching phone calls in any sort of automated fashion.  *Id.* Consequently, the phone calls Plaintiff received from MRS were not made using an ATDS, as that term is defined by the TCPA.  Plaintiff's lack of any actual facts, or any good faith arguments based on probative facts, which might suggest otherwise is dispositive of Plaintiff's claim.

Moreover, every court to consider the issue has ruled that HCI is not an ATDS as a matter of law.  *See Virnig v. TD Bank USA, N.A.*, No. 18-cv-824, 2020 WL 9720199, at *2 (W.D. Ky. Aug. 14, 2020) (finding that LiveVox HCI is not an ATDS); *Mercadel v. Allied Interstates, LLC*, No. 1:19-cv-2641-CC-JSA, 2020 WL 10224373, *1 (N.D. Ga. May 29, 2020) (adopting Report & Recommendation), 2020 WL 10224010, *4 (N.D. Ga. May 5, 2020) (Magistrate Judge's Report and Recommendation); *Meier v. Allied Interstate, LLC*, No. 18-cv-1562-GPC-BGS, 2020 WL 819014 (S.D. Cal. Feb. 19, 2020) (finding that LiveVox HCI does not qualify as an ATD); *Ammons v. Diversified Adjustment Serv., Inc.*, No. 2:18-cv-

06489-ODW (MAAx), (C.D. Cal. Oct. 9, 2019) (same); *Collins v. Nat'l Student Loan Program*, 360 F. Supp. 3d 268, 273 (D.N.J. 2018) (same); *Hatuey v. IC Systems, Inc*., No. 16-cv-12542, 2018 WL 5982020, *6-7 (D. Mass. Nov. 14, 2018) (same); *Fleming v. Associated Credit Servs*., 342 F. Supp. 3d 563, 578 (D.N.J. 2018); *Arora v. Transworld Sys. Inc*., No. 15-cv-4941, 2017 WL 3620742, *3 (N.D. Ill. Aug. 23, 2017); *Schlusselberg v. Receivables Performance Mgmt., LLC*, No. 15-CV-7572(FLW), 2017 WL 2812884, *4 (D.N.J. June 29, 2017) (holding that LiveVox's HCI system does not have the capacity or the potential functionality to be an autodialer within the meaning of the TCPA and the FCC's 2015 Order); *Smith v. Stellar Recovery, Inc*., No. 2:15-cv-11717, 2017 WL 955128, *3 (E.D. Mich. Mar. 13, 2017) (denying objections to Magistrate Report & Recommendation available at 2017 WL 1336075 (E.D. Mich. Feb. 7, 2017)); *Pozo v. Stellar Recovery Collection Agency, Inc*., No. 8:15-cv-929-T-AEP, 2016 WL 7851415, *4 (M.D. Fl. Sept. 2, 2016) (finding that LiveVox HCI is not an autodialer).

In addition, in *Facebook, Inc*, 141 S.Ct. 1163 (2021), the Supreme Court recently held that "[t]o qualify as an 'automatic telephone dialing system,' a device *must have the capacity* either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. (emphasis added).   As stated *supra*, none of LiveVox's systems – including HCI -- have ever had the capacity to use a random or sequential

number generator to either store telephone numbers or produce telephone numbers to be called.  Siegel Decl. ¶ 20.  Thus, there is no genuine issue of fact with respect to whether MRS used an ATDS to place calls to Plaintiff.  The record indisputably reflects that MRS did not place any calls to Plaintiff using an ATDS.  Consequently, MRS is entitled to summary judgment on Plaintiff's TCPA claim.

## V.    CONCLUSION

Based on the foregoing arguments, MRS respectfully requests the Court to enter an order granting summary judgment in favor of MRS with respect to Plaintiff's claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated:  January 7, 2022                     /s/ Aylix K. Jensen
                                            Aylix K. Jensen (#0398588)
                                            *Pro hac vice*
                                            MOSS & BARNETT, P.A.
                                            150 South Fifth Street, Suite 1200
                                            Minneapolis, MN 55402
                                            Telephone: (612) 877-5434
                                            Facsimile: (612) 877-5048
                                            Aylix.Jensen@lawmoss.com

                                            Richard B. Weinman, Esq.
                                            Florida Bar No.: 0231370
                                            rweinman@whww.com
                                            **Winderweedle, Haines, Ward**
                                            **& Woodman, P.A.**
                                            329 Park Avenue North, 2nd Floor
                                            Winter Park, Florida 32789
                                            Tel: (407) 423-4606
                                            Fax: (407) 645.3728

*Attorneys for Defendant MRS BPO, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the individual(s) listed below by Electronic Notification pursuant to ECF procedures on this 7th day of January, 2022 to:

Alejandro E. Figueroa, Esq.
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
*Attorneys for Plaintiff*


<u>/s/ Patricia J. Egdorf</u>
Patricia J. Egdorf